IN THE MATTER OF THE ESTATE OF CHARLOTTE A. COE, DECEASED.

PHILIP J. BOWERS & CO., A NEW JERSEY CORPORATION, PLAINTIFF v. THE NATIONAL NEWARK AND ESSEX BANKING COMPANY OF NEWARK, SUBSTITUTED TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF CHARLOTTE A. COE, DECEASED, *ET AL.*, DEFEND-ANTS.

Superior Court of New Jersey
Chancery Division

Decided November 5, 1962.

*Mr. Charles B. Niebling* for plaintiff Philip J. Bowers & Co. (*Messrs. Lum, Biunno & Tompkins,* attorneys).

*Mr. John C. Howell* for The National Newark and Essex Banking Company of Newark, substituted trustee under the last will and Testament of Charlotte A. Coe, deceased, plaintiff and defendant in the respective actions (*Messrs. Pitney, Hardin & Kipp,* attorneys).

*Mr. Thomas J. Bitar* for defendants Harry P. Downs, Jr. and Barbara Y. Downs, his wife, Bertha Miller Downs, individually, and Bertha Miller Downs and Harry P. Downs, Jr. as executors under the last will and testament of Harry P. Downs, Sr., deceased (*Messrs. Jeffers and Mountain,* attorneys).

*Mr. George Warren,* guardian *ad litem* for Mary Gaddis Plum, *pro se.*

*Mr. James E. Quinn* for defendants, Theodora Tipton Warren and Margaret Anne Tipton Coles (*Messrs. Morris, Downing & Sherred,* attorneys).

*Mr. Thomas V. Jardine* for defendants Stephanie P. Guthrie, Edward A. Guthrie, Emeline P. Flanagan, John K. Flanagan, Malcolm Plum and Susan A. Plum (*Messrs. Carey & Jardine,* attorneys).

*Mr. James D. Carton, III,* for defendants William T. Plum, Jr. and Virgie S. Plum, his wife, Bertha Plum Anderson and Lonsdell Anderson, her husband, Lucetta Plum Churchill and Lester Churchill, her husband (*Messrs. Durand, Ivins & Carton,* attorneys).

*Mr. Arthur J. Marlin, Jr.* for defendants Stephen H. Plum, Jr. (also known as Stephen H. Plum, III), Emilie Boyd Plum, Lucretia P. Stout, James H. Stout, Mary Plum Schneider and Hubert A. Schneider; and Stephen H. Plum, Jr., executor of the will of Martha J. Plum, deceased.

MINTZ, J. S. C.  Charlotte A. Coe ("testatrix") died on September 8, 1897 leaving a last will and testament dated September 1, 1897 which was duly admitted to probate.  The National Newark and Essex Banking Company of Newark ("bank"), substituted trustee under said will, applies for instructions as to the proper method of distributing the *corpus* of the trust and for approval of its final account.  This action was prompted by the death on September 13, 1960 of Theodora Margery Coe Tipton, the life tenant under the testamentary trust ("life tenant").

Part of the trust estate consists of land ("Coe parcel") located at the southwest corner of Washington and Plum Streets, Newark, New Jersey, and designated by testatrix in paragraph Fifth of her will as "my houses and lots on Plum Street."

Philip J. Bowers & Co. ("Bowers") instituted the second action seeking specific performance of an agreement to purchase the Coe parcel.  Bowers and/or its assignee R. H. Macy & Co., Inc. ("Macy") are in possession of the Coe parcel under a 1925 lease entered into by their assignor, Aetna Realty Company, the former trustee and certain remaindermen then existing under the Coe will.  The lease, *inter alia*, provides for the purchase of the Coe parcel at the termination of the life estate at a price to be determined by appraisal of the land plus $5,000, the agreed value of the building thereon at the time of the making of said lease agreement.  The lease was renewed in 1955 wherein the provision for sale in the 1925 lease was ratified and confirmed.  Some of the defendants in the Bowers action answered that they are not bound by their ancestors' signatures on the 1925 lease, and since they are not signatories to the 1955 lease, they are not obliged

to convey their interests in the subject property to Bowers. The bank suit and the Bowers suit were consolidated for trial.

Following the original pretrial conference some of the defendants raised the point that the Coe parcel had been augmented by one-half of the bed of the former Plum Street, abutting thereon, upon the vacation of that street by the City of Newark in 1950. As a result, the administratrix of the life tenant's estate and certain remaindermen asserted counterclaims against the bank, alleging failure to charge and collect additional rent from Bowers or Macy with respect to the street bed section of the Coe parcel.

The bank denied these charges, but nevertheless asserted a third-party claim against Bowers and Macy to the effect that if the bank were liable to the counterclaiming defendants, any recovery should rightly be borne by Bowers and Macy, who at all times have been in possession of the Coe parcel.

At the supplemental pretrial conference it was agreed that certain preliminary issues be severed for trial. These issues, presently considered, relate to the construction of the Coe will, including a determination as to which defendants have an interest in the Coe parcel, the extent of same, and whether the adopted children of Theodora Margery Coe Tipton are entitled to a $50,000 bequest.

## I.

The life tenant came to live with testatrix and her husband Theodore as a child. She was raised by them but never formally adopted in testatrix's lifetime. Theodore Coe lawfully adopted the life tenant on January 27, 1899. He died on April 20, 1916.

The life tenant married Arthur C. Tipton on September 3, 1907 and thereafter lawfully adopted two daughters, to wit, Theodora Coe Tipton (Warren) on July 10, 1916, and Margaret Ann Tipton (Coles) on September 6, 1935 ("adoptees"). The life tenant had no natural children.

The pertinent provision in the Coe will under which the adoptees claim the $50,000 bequest is paragraph Fourth in

which testatrix left the residue of her estate in trust and directed her trustees to pay one-half of the net income to her husband, Theodore Coe, during his life or until his remarriage, and the remaining one-half to the life tenant during her life. It further provided that:

"Upon the death or remarriage of my said husband and the death of said Theodora Margery Coe, I order and direct that my said trustees, or the survivor, or survivors, of them shall hold the sum of Fifty Thousand Dollars, of the corpus of my estate, in trust, for the lawful children of the said Theodora Margery Coe, to pay the income for their maintenance, support and education during their minority, and to pay over their respective shares of the corpus to such of them as reach the age of twenty-one years, upon their attaining that age; and if no child of the said Theodora Margery Coe survives to attain the age of twenty-one years, then I order that the said corpus shall be distributed as hereinafter provided."

The judicial function in construing a will is to ascertain and give effect to the probable intention of the testatrix. In ascertaining her subjective intent, primary emphasis is given to her dominant plan and purpose when read and considered in the light of the surrounding facts and circumstances. *Fidelity Union Trust Co. v. Robert*, 36 *N. J.* 561 (1962).

In the case of *In re Wehrhane*, 23 *N. J.* 205 (1957), the court concluded that the word "issue" as used in that will did not include adopted children, and in the course of its opinion stated at *page 208*:

"All parties are in accord respecting the decisional law of our State that a provision for a 'child,' 'children' or 'issue' of another is presumed not to include an adopted child or children. See, *e. g., In re Fisler*, 131 *N. J. Eq.* 310 (*Prerog.* 1942), affirmed 133 *N. J. Eq.* 421 (*E. & A.* 1943); *Fidelity Union Trust Co. v. Potter*, 8 *N. J. Super.* 533 (*Ch. Div.* 1950). The rule has general acceptance. 5 *American Law of Property* (1952), secs. 22.34, 22.36. The same authorities invariably recognize that the presumption may be sufficiently contradicted in the total context of the instrument or the circumstances surrounding and existent at its execution or the death of the testator."

Justice Jacobs in the concurring opinion observed that:

"To conform with modern concepts, the Legislature has wisely provided that in the construction of any testamentary or other document (executed on or after January 1, 1954) 'an adopted child shall be deemed lawful issue of the adopting parent unless such document shall otherwise provide.' *N. J. S. A.* 9:3–30. However, as the majority opinion indicates the settled judicial presumption, in New Jersey as well as elsewhere throughout the country, has been to the contrary where, as here, the testatrix was a stranger to the adoption; and that has long been the general understanding of the legal profession which presumably has often acted in its light. \* \* \*"

In the case *sub judice* the will of the testatrix was executed in 1897 and is therefore not affected by the cited statutory change in the rule of construction.

The prior decisions on this subject are extensively reviewed in the persuasive dissenting opinion in *Wehrhane* of Chief Justice Weintraub (then Justice). He refers to the enactment in 1877 of the Adoption Law, *L.* 1877, *c.* 83; *R. S.* 9:3–9, which "embodied a common recognition that parental and filial bonds are essentially equal, whether the affiliation be biological or sociological, and provided for inheritance by adopted children in harmony with that common understanding." *In re Wehrhane, supra*, at *page* 214. The Chief Justice is of the view that an adopted child should take unless an intent to exclude is patent.

In opposition to the claim of the adoptees it is urged that the life tenant was never adopted by the testatrix, that after her death the surviving husband adopted the life tenant, and that years later the adoptees were adopted by the life tenant. Thus it is asserted that the testatrix was a "stranger to the adoption." *In re Fisler*, 131 *N. J. Eq.* 310 (*Prerog.* 1942), affirmed 133 *N. J. Eq.* 421 (*E. & A.* 1943) ; *Ahlemeyer v. Miller*, 102 *N. J. L.* 54 (*Sup. Ct.* 1925), affirmed 103 *N. J. L.* 617 (*E. & A.* 1927). The fact that in paragraph Second of the will testatrix bequeathed jewelry to the life tenant and stated that she "has become as a daughter to me, for whom I feel the affection of a mother to a daughter," does not help the cause of the adoptees. The New Jersey Adoption Act

(*L.* 1877, *c.* 83) had been in existence for 20 years preceding the death of testatrix. Yet the testatrix never adopted the life tenant. This, it is urged, may indicate that while the testatrix held great affection for the life tenant, she did not think in terms of family augmentation by adoption. If she did not have such intentions with respect to the life tenant, then it is argued that she did not intend to include the latter's adoptees within the description of "lawful children." (In *Wehrhane* there was testimony indicating that testatrix herself had considered adopting a child at one time.)

It is further observed that in *Wehrhane* the disinheritance of the adopted son disinherits a grandchild in favor of a stranger whom her natural daughter might marry, a second cousin six steps removed and charities. In the instant case the disinheritance of the adoptees enures essentially to the benefit of grandnephews and grandnieces.

The adoptees urge that the life tenant, the primary beneficiary, was only a foster child of the testatrix. Hence, the testatrix had no preference for collateral blood descendants, some of whom she never knew. Although testatrix did not adopt the life tenant, she regarded her as a "daughter" and so described her in the will. It is further urged that in *Wehrhane* the court was concerned with the term "issue" and hence that decision is not controlling. The term "issue" may evidence an intent to include only blood relatives, whereas the term "children" is less restrictive. Attention is also directed to the particular provision in the Adoption Law, *L.* 1877, *c.* 83, which invests the adopted child with certain rights of inheritance and makes such adopted child the lawful child of the adopting parent. *In re Book,* 90 *N. J. Eq.* 549 (*E. & A.* 1919). While *In re Book* was concerned with statutory construction rather than testamentary interpretation, there is no reason to attribute to testatrix or the scrivener of her will a use of the word contrary to the legislative intent.

There is much to be said for the position of the adoptees. However, as already observed, *Wehrhane* makes no

distinction between "child," "children" or "issue" of another. The use of the phrase "lawful children" by testatrix as opposed to simply "children" does not aid the cause of adoptees. A witness to her will who presumably was also the scrivener was a competent and respected lawyer. Apparently he did not inquire of testatrix whether she intended to include or exclude children by adoption. If he had, he probably would have made express provision with respect thereto in the will. It seems more reasonable to conclude that the subject of adoption was not discussed and that the term "lawful children" was intended to refer to "legitimate children." *Cf. Davis v. Davis*, 39 *N. J. Eq.* 13 (*Ch.* 1884); *Eldridge v. Eldridge*, 41 *N. J. Eq.* 89 (*Ch.* 1886). When the will was executed the life tenant was a child. Presumably the testatrix did not at that time envision that the life tenant might not have natural children and resort to adoption. It cannot be assumed that the testatrix who did not adopt the life tenant considered and provided for the eventuality of the life tenant adopting children. As observed in *Wehrhane* the attitude towards adopted children has changed over the years. It is more likely that a testatrix in today's society would regard an adopted child as occupying the same status as a natural child, and it would be easier to impute such intent in construing a will. However, the present day attitude toward adoption is not a barometer of public opinion as it existed in 1897.

Under *Wehrhane* the provision for "children" is presumed not to include adopted children of another. I reluctantly conclude in the case *sub judice* that said presumption has not been sufficiently contradicted by the context of the will or surrounding circumstances. The adoptees are not entitled to the $50,000 bequest, and the same passes under the residuary clause in paragraph Fifth of the will of testatrix.

## II.

Testatrix was survived by two brothers, Stephen and Matthias, whose descendants are defendants in the Bowers action.

Their rights are controlled by paragraph Fifth of the Coe will which provides:

"* * * I devise my houses and lots on Plum Street, Newark, New Jersey, after the death * * * of said Theodora Margery Coe, one undivided half to the children of my brother, Stephen H. Plum, and one undivided half to the children of my brother Matthias Plum, and I devise and bequeath the residue of the corpus of my estate, after setting apart the fund of Fifty Thousand Dollars above mentioned, one-half to the children of my brother Stephen H. Plum, and one-half to the children of my brother, Matthias Plum; and I order and direct that the children of any deceased child shall take the parent's share."

Testatrix's brother, Stephen H. Plum, died May 31, 1906, leaving three children: Stephen H. Plum, Jr., Margaret M. P. Atha, and Martha J. Plum, all of whom survived him. Her brother, Matthias, died February 13, 1916, leaving four children: Matthias Plum, Jr., Stephen Haines Plum, II, Anna Plum Downs, and William T. Plum, all of whom survived him. The lineage of the two brothers is as follows:

*Family lineage of Stephen H. Plum:*

Stephen H. Plum, Jr. (son) died testate on April 14, 1923, leaving a widow Blanche and three children: Stephen H. Plum, III (also known as Stephen H. Plum, Jr.), Lucretia P. Stout, and Mary Plum Schneider, all of whom survived him.

Margaret M. P. Atha (daughter) died testate on February 16, 1919, leaving a husband, Henry G. Atha, and two children: Margaret A. Crane and Sarah A. Seggerman, both of whom survived her. Sarah died testate on February 27, 1946, survived by her husband Kenneth and three children. She left the residue of her estate to her husband.

Martha J. Plum (daughter) died testate and unmarried on October 31, 1961. She left the residue of her estate to the said Stephen H. Plum, III, Lucretia P. Stout, Mary Plum Schneider and Margaret A. Crane.

*Family lineage of Matthias Plum:*

Matthias Plum, Jr. (son) died testate on January 15, 1928, leaving a widow, Mary C. Gaddis Plum, and three children: Mary Plum Potter, Matthias Plum, III, and E. Gaddis Plum, all of whom survived him. E. Gaddis Plum died testate on or about March 27, 1945, leaving a widow, Beatrice, and a daughter Mary Gaddis Plum. He devised all his realty and the residue of his estate to his widow who has since remarried.

Stephen Haines Plum, II (son) died intestate February 16, 1955, leaving his widow, Madge W. Plum, and three children: S. H. Malcolm Plum, Stephanie Plum Guthrie and Emeline Plum Flanagan, all of whom survived him.

Anna Plum Downs (daughter) died a widow and intestate on November 26, 1954, leaving one child, Harry Plum Downs, Sr. He died testate on April 12, 1960, leaving a widow Bertha Miller Downs and a child, Harry P. Downs, Jr., who survived him. In his will he left the residue of his estate to his widow.

William T. Plum (son) died intestate on August 4, 1931, leaving a widow, Bertha K. Plum, who died on September 24, 1961, and three children: William T. Plum, Jr., Bertha Plum Anderson, and Lucetta Plum Churchill, all of whom survive.

The descendants' claim to the residue including the Coe parcel is predicated upon paragraph Fifth of testatrix's will which, as already observed, upon the death of the life tenant gives "one half to the children of my brother Stephen H. Plum, and one half to the children of my brother, Matthias Plum; and I order and direct that the children of any deceased child shall take the parent's share."

Plaintiff Bowers contends that the remainder interests in the land vested indefeasibly in the children of the testatrix's brothers, Stephen and Matthias, at the death of testatrix in 1897 or at the latest upon the deaths of Stephen and Matthias in 1906 and 1916, and thus before the substitutionary gift to

children of deceased children could take effect. The defendants and the bank urge that the seven children of Stephen and Matthias received a vested interest in remainder subject to divestment. Six of said children predeceased the life tenant, and their shares, it is urged, were divested when they died and immediately vested in their children. Some of these grandnephews and grandnieces of the testatrix assert that any contract entered into by their parents concerning interests in the Coe estate is unenforceable against them.

The intention of the testatrix with respect to the nature and extent of the remainder interests is not readily apparent from a reading of the will. Accordingly, the canons of construction must be utilized in aid of ascertaining testamentary intent. The law in this State favors early vesting, and between a contingent and a vested construction the vested construction will be favored. *Havens v. Sea Shore Land Co.,* 47 *N. J. Eq.* 365 (*Ch.* 1890); *Teets v. Weise,* 47 *N. J. L.* 154 (*E. & A.* 1885). Admittedly the children of Stephen and Matthias took vested remainders, but the issue in this case is whether or not any such vested interests are subject to divestment.

The gift in the Coe will is strikingly similar to that considered in *Redmond v. Gummere,* 94 *N. J. Eq.* 216 (*E. & A.* 1922). There the will provided for payment of the net income from a trust to the two daughters of the testatrix for their natural lives and upon their marriage or death to pay over and divide the proceeds realized from the sale of certain real estate among five children of the testatrix "in equal shares, in all cases the children of a deceased parent to receive said parent's share." *Id.,* at *page* 217. The court in construing such gift held that:

"The meaning and effect of the concluding clause of the trust or gift, 'in all cases the children of a deceased parent to receive said parent's share,' is of course perfectly clear, to this extent: That as to each of the five named remaindermen, if he or she dies before the arrival of the distribution period, leaving children, the share or interest theretofore vested in him or her shall become thereby divested and shall vest in such children. * * *" *Id.,* at *p.* 218.

This rule was applied in *Federal Trust Co. v. Walsh,* 20 *N. J. Super.* 542 *(Ch. Div.* 1952), the court holding that where a will provides for children to take in substitution upon the death of the parent, if the parent dies before the arrival of the distribution period, the share or interest theretofore vested in the parent shall become divested and shall vest in such children. To same effect see *Security Trust Co. v. Lovett,* 78 *N. J. Eq.* 445 *(Ch.* 1911) ; *Miers v. Persons,* 92 *N. J. Eq.* 17 *(Ch.* 1920) ; *Traverso v. Traverso,* 99 *N. J. Eq.* 514 *(Ch.* 1926), affirmed on opinion 101 *N. J. Eq.* 308 *(E. & A.* 1927). In the instant case, while the vesting in the three children of Stephen and the four children of Matthias may have occurred at the death of the testatrix or upon the deaths of their respective parents (the specific vesting date not being material in this case), such vesting was subject to divestment prior to distribution.

Upon the death of a remainderman leaving children, the remainder interests vest immediately and indefeasibly in such children. There is no implied requirement that the children also must survive the life tenant. *Acken v. Osborn,* 45 *N. J. Eq.* 377 *(Ch.* 1889) ; *Van Giesen v. White,* 53 *N. J. Eq.* 1 *(Ch.* 1894) ; 5 *Clapp, Wills and Administration* (3d ed. 1962), § 274, *p.* 512. (This principle applies to the interests of E. Gaddis Plum, Harry P. Downs and Sarah A. Seggerman, each of whom predeceased the life tenant.) A remainderman so vested subject to being divested in favor of his children who survive him cannot join with the life tenant to defeat the interest of his children. *Schmieder v. Meyer,* 97 *N. J. Eq.* 335 *(E. & A.* 1925) ; *Holden v. Morgan,* 115 *N. J. Eq.* 59 *(Ch.* 1933) ; Annotation, 25 *A. L. R.* 770, 771 (1923).

A bequest of personal property to a class without words of severance will be deemed to create a joint tenancy rather than a tenancy in common. Hence the children of a deceased parent take the parent's share of personal property with a right of survivorship. *Redmond v. Gummere, supra; Burlington County Trust Co. v. DiCastelcicala,* 2 *N. J.* 214

(1949). The terms "share and share alike," "in equal shares" and "divide" have been construed to be words of severance, creating a tenancy in common. 5 *Clapp, supra,* at *page* 504; *Camden Trust Co. v. Birch,* 131 *N. J. Eq.* 542, 547 (*Ch.* 1942). However, there are no such words of severance in paragraph Fifth of the will of the testatrix, so that the bequest in that paragraph must be held to vest the substitutionary legatees with a joint tenancy. However, as indicated in *Wyckoff v. Young Women's Christian Ass'n,* 37 *N. J. Super.* 274, 282 (*Ch. Div.* 1955), our decisional authorities make a distinction between realty and personalty. Where there is a grant or devise of real property, express words are needed in order to create a joint tenancy. *R. S.* 46:3–17.

There are no express words in paragraph Fifth of the will creating a joint tenancy in any real property devised therein. Hence, the substitutionary beneficiaries take the residue of the realty as tenants in common. Thus upon the death of Matthias Plum, Jr., his three children became the substitutionary devisees of the realty as tenants in common. When Matthias Jr.'s son, E. Gaddis Plum, died, his vested interest passed under his will to his widow. The interest of E. Gaddis Plum in the residue of the personalty was that of a joint tenant, subject to the incident of survivorship, and accordingly passed to his sister Mary and brother Matthias, III.

Similarly, when Margaret M. P. Atha died, her daughters Margaret A. Crane and Sarah A. Seggerman acquired as substitutionary beneficiaries her interest in the realty as tenants in common, and as joint tenants in the residue of the personalty. When Sarah died her interest in the realty passed under her will. Her interest in the personalty was subject to the incident of survivorship and passed to her sister Margaret A. Crane.

Harry P. Downs, who likewise predeceased the life tenant, had no brothers or sisters. Hence he took under paragraph Fifth an indefeasibly vested one-eighth interest in the realty

and personalty and his death prior to the termination could not affect his interest, which passed under his will.

The guardian *ad litem* for Mary Gaddis Plum urges that the clause, "the children of any deceased child shall take the parent's share," in paragraph Fifth of the subject will should be construed so as to include grandchildren of a deceased child. Under such construction the said minor would take the share of her father, E. Gaddis Plum. The word "children" in a will ordinarily means nothing more than its natural and usual meaning in everyday language unless there is something in the will to indicate that it was intended to be more extensive. *Redmond v. Gummere, supra; Central Hanover Bank & Trust Co. v. Helme*, 121 *N. J. Eq.* 406 (*Ch.* 1937); *Forshee v. Dowdney*, 101 *N. J. Eq.* 446 (*Ch.* 1927), affirmed on opinion 103 *N. J. Eq.* 374 (*E. & A.* 1928); 5 *Clapp, supra,* at *page* 355.

It is urged that the obvious intent of the testatrix was to provide for a devolution of the residue of her property within the blood lines of her two brothers. Hence her probable intent was to provide for the taking by great grandchildren of her brothers in cases where her brothers' grandchildren did not survive the life tenant. I find no such intent to be gleaned from the will and conclude that the word "children" as used by the testatrix is to be given its everyday meaning.

The four children of Matthias had they survived the life tenant would have each been entitled to a one-eighth share of the residue of the Coe estate. Since they did not so survive, the share theretofore vested in him or her was divested upon their respective deaths and vested in their children. Two of the three children of Stephen predeceased the life tenant, his third child Martha J. Plum died subsequent to her death. The one-sixth share theretofore vested in each of his two children who predeceased the life tenant became vested in their respective children. Martha's interest was indefeasibly vested in her at the time of her death and is distributed as provided by her will.

Accordingly, I conclude that under paragraph Fifth the residue of the estate is to be fractionally distributed as follows:

*Descendants of Matthias Plum*

|  | *Realty* | *Personalty* |
|---|---|---|
| 1/8th share of *Matthias Plum, Jr.* | | |
| Mary P. Potter | 1/24 | 1/16 |
| Matthias Plum, III | 1/24 | 1/16 |
| Estate of E. Gaddis Plum | 1/24 | |
| 1/8th share of *Stephen Haines Plum, II* | | |
| S. H. Malcolm Plum | 1/24 | 1/24 |
| Stephanie P. Guthrie | 1/24 | 1/24 |
| Emeline P. Flanagan | 1/24 | 1/24 |
| 1/8th share of *Anna P. Downs* | | |
| Estate of Harry P. Downs, Sr. | 1/8 | 1/8 |
| 1/8th share of *William T. Plum* | | |
| William T. Plum, Jr. | 1/24 | 1/24 |
| Bertha P. Anderson | 1/24 | 1/24 |
| Lucetta P. Churchill | 1/24 | 1/24 |

*Descendants of Stephen H. Plum*

| 1/6th share of *Stephen H. Plum, II* | | |
|---|---|---|
| Stephen H. Plum, III | 1/18 | 1/18 |
| Lucretia P. Stout | 1/18 | 1/18 |
| Mary P. Schneider | 1/18 | 1/18 |
| 1/6th share of *Martha J. Plum* | | |
| Estate of Martha J. Plum | 1/6 | 1/6 |
| 1/6th share of *Margaret M. P. Atha* | | |
| Margaret A. Crane | 1/12 | 1/6 |
| Estate of Sarah A. Seggerman | 1/12 | |

Appropriate orders will be submitted, consented to as to form or be settled upon notice.